IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 08-789-SLR |
| ) | |
| HIPOLITO PAUL AGUILLON, M.D., ) | |
| ) | |
| Defendant. ) | |

Lesley F. Wolf, Esquire, United States Attorney's Office, Wilmington, Delaware. Counsel for Plaintiff.

Adam Balick, Esquire, and Joanne Ceballos, Esquire, of Balick & Balick, LLC, Wilmington, Delaware.  Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: June 24, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff, the United States of America, filed this complaint under the False Claims Act ("FCA"), 31 U.S.C. § 3279, against defendant, Hipolito Paul Aguillon, M.D., on October 22, 2008. (D.I. 1) Plaintiff claims that defendant submitted false Medicare claims by billing the United States at a higher rate "than was warranted by the medical services necessary or actually performed in order to receive a higher rate of reimbursement." (D.I. 1 ¶ 2) The United States is seeking civil penalties for violations of the FCA that allegedly occurred between March 1, 2005 and December 20, 2006. (D.I. 1 ¶ 2) This court has jurisdiction pursuant to 28 § U.S.C. 1345, 31 U.S.C. § 3729 and § 3730(a). Currently before the court is defendant's motion to dismiss plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 3)

## II. BACKGROUND

Defendant, "a health care service provider who participates in federally-funded health care programs including Medicare," maintains a medical office in Seaford, Delaware. (D.I. 1 ¶¶ 4, 7) Medicare is a federal health insurance program designed primarily for the elderly, is funded by the United States Department of Health and Human Services ("HHS") and is administered by the Centers for Medicaid and Medicare Services ("CMS"). (D.I. 1 ¶ 8) Medicare, which is codified in 42 U.S.C. § 301 *et seq.*, is split into two parts. Part B, the relevant part for the purposes of this complaint, covers the cost of services provided by physicians and other services. (D.I. 1 ¶ 8)

During the relevant time period, Trail Blazer Health Enterprises ("THBE") served as the private Medicare administrative contractor (the "carrier") for Delaware. (D.I. 1 ¶

9; see 42 U.S.C. § 1395u(a) (2008) (administration of Medicare can be conducted through contracts with Medicare administrative contractors)) THBE contracted with CMS to process claims made by Delaware doctors for their treatment of Medicare beneficiaries. (D.I. 1 ¶ 9) Plaintiff alleges that defendant was required to submit claims for payment to TBHE, which would then request payment from the United States on behalf of defendant. (D.I. 1 ¶ 9) During the relevant time period, TriCenturion served as the "Program Safeguard Contractor" for Delaware and, as such, was responsible for the detection and investigation of fraud connected to Medicare.[1] (D.I. 1 ¶ 10)

Plaintiff alleges that defendant billed the United States for Evaluation and Management ("E & M") services for patients at a fraudulently higher billing rate than allowed under Medicare Part B. (D.I. 1 ¶ 2) Physicians submitting claims for reimbursement for E & M services must designate a Current Procedural Terminology ("CPT") code, along with supporting documentation, to indicate the level of medical services provided and to request a predetermined reimbursement rate. (D.I. 1 ¶¶ 11-12) The supporting documentation must substantiate that the care provided was

---

[1] Plaintiff states that defendant has mischaracterized the allegations of the complaint in stating that the claims were submitted for pre-payment review to either TBHE or TriCenturion. (D.I. 6 at 6 n.3 (referring to D.I. 4 at 6)) Clarifying the alleged claim submission process that the defendant undertook, plaintiff states that supporting documentation was submitted to both TBHE and TriCenturion, but all of the actual claims were submitted only to TBHE. (D.I. 6 at 6 n.3)

2

medically warranted and actually provided. (D.I. 1 ¶ 12) The complaint lists five CPT codes (99211 to 99215)[2] for E & M services relevant to the complaint.[3] (D.I. 1 ¶ 11)

Plaintiff claims that TBHE conducted an initial review of defendant's billing practices in 2002. (D.I. 1 ¶ 13) The initial review revealed that defendant had indicated the highest CPT code (99215) for 99% of his E & M visits, where peer physicians only indicated the highest CPT code for 2% of their visits. (D.I. 1 ¶ 13) According to plaintiff, TBHE down-coded 76% of defendant's E & M services claims and denied the remaining 24% of defendant's claims pursuant to the initial review and before paying any false claims. (D.I. 1 ¶ 13) Because the initial review led TBHE to reduce or deny all of defendant's CPT 99215 claims prior to payment, TBHE purportedly placed defendant on pre-payment review around October 2002 for all CPT 99215 claims. (D.I. 1 ¶ 14) Plaintiff also alleges that TBHE occasionally found that defendant's claims for E & M services appeared to have been altered or "whited out." (D.I. 1 ¶ 19)

Plaintiff asserts that on or around July 11, 2003, TBHE requested that defendant complete computer training on E & M services, but defendant did not complete the requested training. (D.I. 1 ¶ 15) On or around September 16, 2003, TBHE expanded its pre-payment review to include all of defendant's E & M services claims between CPT

---

[2] CPT 99211, the lowest of the codes relevant to this complaint, indicates a claim where a patient presented minimal problems to a member of the physician's staff which required only a few minutes of the staff member's time. (D.I. 1 ¶ 11) The highest code, 99215, represents a reimbursement claim for complex medical issues which required the physician to spend about forty minutes with the patient. (D.I. 1 ¶ 11)

[3] Defendant notes that there are many more than five E & M CPT codes, and alleges that the exhibits to the complaint include a small percentage of CPT codes outside of the 99211 to 99215 series.

codes 99211 and 99215, and TBHE renewed its request for defendant to complete computer training. (D.I. 1 ¶ 16) Defendant complied with the renewed request and completed the training. (D.I. 1 ¶ 16) Despite the training, defendant purportedly continued to submit incorrect claims. (D.I. 1 ¶ 17) TBHE asked defendant to complete an advanced computer training module on E & M services on or around January 23, 2004 and renewed the request multiple times until its final unsuccessful request on November 23, 2004. TBHE removed defendant from pre-payment review in late February 2005.[4] (D.I. 6 at 4 n.2) TriCenturion placed defendant on 100% pre-payment review for all E & M services on or around June 3, 2005. (D.I. 1 ¶ 20)

Plaintiff alleges that defendant submitted 3,855 E & M services claims between March 1, 2005 and December 20, 2006, and alleges that 2,420 of those claims were false, with 925 of the false claims being reduced to a CPT code with a lower reimbursement rate. (D.I. 1 ¶¶ 21, 22) The down-coded claims were paid at the correct reimbursement rate, and none were paid at the higher false rates requested by defendant. (D.I. 1 ¶ 22) Plaintiff also asserts that 1,495 claims were completely disallowed, and were not paid or approved. (D.I. 1 ¶ 23)

---

[4] The complaint contains the allegation that **TBHE** terminated pre-payment review on June 3, 2005. Plaintiff corrected this assertion in its opposition brief and alleged that TBHE terminated full pre-payment review in late February 2005, although TBHE did continue to monitor defendant's billing practices. (D.I. 6 at 4 n.2) Plaintiff maintains that **TriCenturion** commenced pre-payment review for defendant's claims on June 3, 2005. Defendant claims that this corrected fact cannot be used in deciding the motion to dismiss for failure to state a claim. The court agrees with plaintiff that the error is immaterial because all of the claims at issue in the complaint were subject to review.

Plaintiff asserts that the claims were false because defendant knowingly billed for E & M services "at a higher CPT code than was medically warranted," did not actually provide the services, or submitted documentation in support of the claims that was false or altered. (D.I. 1 ¶¶ 25, 27) Plaintiff claims that defendant violated 31 U.S.C. § 3729(a)(1) and (a)(2), and is seeking between $5,500 and $11,000 in civil penalties for each of the alleged false claims made by defendant. (D.I. 1 ¶ a)

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 554-55 (2007) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "[S]tating...a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but

5

instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d. Cir. 2008) (citations omitted).

## IV. DISCUSSION

### A. Claims Under § 3729(a)(1)

Plaintiff has stated a claim under § 3729(a)(1),[5] which imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." § 3729(a)(1). The Third Circuit requires four elements to be proven under § 3729(a)(1): (1) the defendant presented a claim for payment to an agent of the United States; (2) the claim was false or fraudulent; (3) the defendant knew the claim was false or fraudulent; and (4) the false or fraudulent claim "caused or would cause economic loss to the United States Treasury." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182-185 (3d Cir. 2001).

#### 1. Presentation

With respect to the first element, § 3729(a)(1) requires presentation of a false or fraudulent claim for payment or approval to an "officer or employee of the United States government." Section 3729(c) expands the presentment element beyond the strict language of § 3729(a)(1) because it defines "claim" as

> any request or demand, whether under a contract or otherwise, for money or property which is made to **a contractor, grantee, or other recipient** if the United States Government provides any portion of the money or

---

[5] Unless otherwise stated, all section number references herein refer to 31 U.S.C., and all references herein to 31 U.S.C. § 3729 refer to the version in force at the time of the alleged violations.

>property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

*See* § 3729(c) (emphasis added). The Third Circuit, in *Hutchins*, has interpreted § 3729(a)(1) as requiring the plaintiff to show that "the defendant presented or caused to be presented to an **agent of the United States** a claim for payment." *Hutchins*, 253 F.3d at 182 (emphasis added). Therefore, plaintiff must merely allege presentation of claims to an agent of the United States, and not the more burdensome requirement of presentation to an "officer or employee of the United States Government." *Id.*

Medicare carriers are considered agents of the United States for the purposes of the FCA.[6] *See* 42 C.F.R. 421.5(b) ("Intermediaries and carriers act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes."); *United States v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430, 438 (E.D. Pa. 2004) (health plan contracting with the government to provide health care to the government's

---

[6] That presentation to an agent satisfies presentment is reinforced by recent amendments to the FCA, the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 4, 123 Stat. 1617 (current law summarized at 31 U.S.C.A. § 3279). FERA amended the statutory language to only require presentation of a false claim to an "officer, employee or **agent** of the United States." § 4(a)(2), 123 Stat. at 1622 (current version at 31 U.S.C.A. § 3729(a)(1)(A), (b)(2) (emphasis added)).
    This conclusion that Medicare carriers are agents of the United States also appears to be consistent with Congressional intent in light of the recent amendments to the FCA. Congress specifically addressed the presentation requirement in the Medicaid context: "[T]he FCA reaches all false claims submitted to State administered Medicaid programs." S. Rep. 111-10, Section 4(A) (March 23, 2009).

employees was an agent of the United States);[7] *Courtney v. Choplin,* 195 F. Supp. 2d 649, 651 (D. N.J.,2002) *(*medicare carrier is "an agent of CMS"); *Nichols v. Omni H.C. Inc.*, 2008 WL 906425 at *4 (M.D. Ga. Mar. 31, 2008) ("claims that are submitted to Medicaid are claims to the federal government").

Plaintiff has alleged that TBHE served as "the contracted Medicare carrier for the State of Delaware," that defendant was required to submit Medicare claims for payment to TBHE, and that TBHE would then request payment from the United States on behalf of defendant. (D.I. 1 ¶ 9) Therefore, plaintiff has sufficiently alleged that defendant presented false claims to TBHE, a Medicare carrier and an agent of the United States.

### 2. Knowledge of false or fraudulent claims

With respect to the second element, plaintiff has adequately alleged that the claims submitted by defendant were false or fraudulent. (D.I. 1 ¶ 27) The complaint states that CPT codes were fraudulently higher than medically warranted, services that were claimed were not actually provided, and documentation submitted in support of the claims was false or altered. (D.I. 1 ¶ 27)

As to the third element, the FCA requires that the defendant have "actual knowledge of the information," act in "deliberate ignorance of the truth or falsity of the information," or act in "reckless disregard of the truth or falsity of the information." § 3729(b)(i)-(iii). Plaintiff has alleged that defendant "knowingly billed for E & M services

---

[7] Plaintiff (Blue Cross) contracted with the government to provide health care to government employees, retirees and their families. Blue Cross contracted with defendant, a pharmacy benefit manager, to manage prescription drug benefits for the health plan. Defendant billed Blue Cross for "services rendered to federal beneficiaries, and the United States reirnburse[d] plaintiff." *Id.* at 438. Presentment was adequately alleged.

at a higher CPT code than was medically warranted, the claimed services were not provided, and/or the documentation submitted in support of the claims was false or altered to support the payment of these claims." (D.I. 1 ¶ 27) Therefore, plaintiff has satisfied its burden to allege that defendant knowingly submitted false claims. (D.I. 1 ¶¶ 15, 16)

### 3. Economic loss

In order to satisfy the fourth element, plaintiff must assert that the false claims caused or would have caused economic loss to the government. *Hutchins*, 253 F.3d at 185. "The law in the Third Circuit is settled that a claim brought under 31 U.S.C. § 3729(a)(1) need not actually be paid to be actionable." *Merck-Medco*, 336 F. Supp. 2d at 441 ("a causal link between a false claim and economic harm must be possible, plausible and pleaded, even though the claim need not actually be **paid**." (original emphasis)). The Third Circuit has found that liability under the FCA attaches if "a demand for money has been made on the government, the government has been billed for nonexistent or worthless goods, or charged exorbitant prices, or the fraud might cause the government to suffer economic loss." *U.S. ex rel. Watson v. Connecticut General Life Ins. Co.*, 87 Fed. App'x. 257, 260 (3d Cir. 2004) (quotation omitted); *see also Hutchins*, 253 F.3d at 179.

The complaint states that defendant "billed for E & M services at a higher CPT code than was medically warranted, [or] the claimed services were not provided." (D.I. 1 ¶ 27) Additionally, plaintiff alleges that claims for payment were submitted to TBHE, which would request payment from the government on behalf of defendant. (D.I. 1 ¶ 9)

Therefore, plaintiff has alleged that defendant billed the government for "nonexistent or worthless goods, or charged exorbitant prices," and has alleged potential economic harm to the government. *Watson*, 87 Fed. App'x. at 260.

For the aforementioned reasons, plaintiff has stated a claim under § 3729(a)(1), and defendant's motion to dismiss shall be denied in this regard.

### B. Claims Under § 3729(a)(2)

A defendant is liable under § 3729(a)(2) if he "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." § 3729(a)(2) (amended May 2009, current version available at 31 U.S.C.A. § 3729(a)(1)(B)). Under § 3729(a)(2), a plaintiff must prove that: (1) the defendant made, used or caused to be made or used a false record or statement to get a claim against the United States paid or approved; (2) the claim was false or fraudulent; (3) the defendant knew the record or statement and the claim were false or fraudulent; and (4) the claim was actually paid or approved. *See United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004)

### 1. Actual payment

Section 3729(a)(2) is silent as to whether actual payment or approval of the false claims is required, or whether a plaintiff must merely allege that a defendant made or used false records with the purpose of causing the false claims to be paid.[8] According

---

[8]Defendant asserts that § 3729(a)(2) requires actual payment or approval of the claim. Plaintiff asserts that "to get a false or fraudulent claim paid or approved by the Government" means only that the false record or statement was made or used with the purpose of causing the claim to be paid or approved, regardless of whether the claim was actually paid or approved.

10

to the Third Circuit in *Zimmer*, "a plaintiff must also show that the defendant made or used (or caused someone else to make or use) a false record in order to cause the false claim to be actually paid or approved." *Id.* The Third Circuit relied on *Civil False Claims and Qui Tam Actions* when formulating its interpretation of § 3729(a)(2). *Id.* (citing 1 John T. Boese, *Civil False Claims and Qui Tam Actions* § 2.01[B], at 2-20 (2003)).[9] According to this treatise: "Unlike a violation of Section (a)(1), which requires mere submission of a false claim without payment or approval, **the explicit language of Section (a)(2) requires actual payment or approval by the Government**." Boese, *supra*, § 2.01[B] at 2-27 n.28 (emphasis added). The Third Circuit adopted the actual payment or approval requirement by citing Boese as the primary support for its interpretation of § 3729(a)(2) and by adding the word "actually" into its interpretation, despite the fact that "actually" does not appear in the statute. *See Zimmer*, 386 F.3d at 242 ("defendant made or used . . . a false record in order to cause the claim to be **actually** paid or approved" (emphasis added)).

Plaintiff has alleged that 925 of defendant's claims were down-coded to a CPT code with a lower rate of reimbursement. (D.I. 1 ¶ 22) Although the down-coded claims were paid, plaintiff admits that the down-coded claims were not false at the time they were paid. (D.I. 1 ¶ 22) Plaintiff also alleges that 1,495 of defendant's claims were false and were subsequently denied prior to payment. (D.I. 1 ¶ 23) Because

---

[9] *Zimmer*, decided in 2004, cited the second edition of the treatise, which was published in 2003. However, the second edition of the treatise was supplemented in 2005. The cited section, 2.01[B], was unchanged according to the filing instructions for the 2005 supplements. Boese, *Civil False Claims and Qui Tam Actions*, at Filing Instructions 1 (rev. 2d ed. Supp. 2005). All further references to *Civil False Claims and Qui Tam Actions* refer to the revised second edition with the 2005 supplements.

plaintiff does not allege that any false claims were actually paid or approved, plaintiff has failed to state a claim under § 3729(a)(2) upon which relief can be granted. *Id.*

### 2. Recent amendments to the FCA[10]

The FCA was amended in May 2009, arguably to eliminate the actual payment or approval requirement.[11] § 4, 123 Stat. 1617 (current version available at 31 U.S.C.A. § 3279). The court briefly addresses retrospective application of the amendment because it appears that no court has had the occasion to address the issue.

The Supreme Court has developed a two-step analysis to determine if new federal statutes can be applied to conduct that occurred prior to enactment of the new statute. *See Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 159 (3d Cir. 1998) (citing *Landgraf v. USI Film Products*, 511 U.S. 244 (1994)). First, the court must determine if Congress has unambiguously restricted the statute to prospective application. *See Mathews*, 161 F.3d at 160 (unambiguous restriction to prospective application ends the inquiry). Second, the court must determine if retrospective

---

[10] In the interest of completeness, the court addresses sua sponte the issue of retrospective application of the FCA amendments because the amendments were passed after the parties completed briefing and, as a result, the parties did not address the issue.

[11] The FCA was amended to impose civil penalties plus any damages for any "false record or statement material to a false or fraudulent claim." § 4(a)(1), 123 Stat. at 1621-1623 (current version at 31 U.S.C.A. § 3729(a)(1)(B)). The amended FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C.A. § 3729(b)(4). Because the false record must only be "capable of influencing the payment or receipt of money," the amended FCA arguably would allow civil penalties without proof of actual payment or approval of the false claims. 31 U.S.C.A. § 3729(a)(1)(B), (b)(4).

application of the statute would create "retroactive effects"[12] and if these effects are permissible pursuant to a congressional directive.[13] *See Mathews*, 161 F.3d at 159-61 (only "Congress's **clear** intent to apply the statute retrospectively" will overcome the presumption against applying statutes with retroactive effects (original emphasis)).

Congress has not unambiguously precluded retrospective application of the FCA amendments. *See* 155 Cong. Rec. E1295-03, at E1300. Although FERA expressly stated that the relevant amendments apply only to "conduct on or after the date of

---

[12] Retrospective application simply means applying a statute to a pending case. "Retroactive effects" occur only when retrospective application causes the statute to reach "back in time and alter[] the rights or obligations on which the parties relied prior to the statute's passage. *Mathews*, 161 F.3d at 160 n.5.

[13] The Third Circuit has announced three principles concerning "retroactive effects."

> 1. There is a strong presumption against applying a statute in a manner that would attach "new legal consequences" to events completed before the statute's enactment, i.e., a manner that would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties."
>
> 2. If Congress has focused on the issue, "has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness," and has provided unambiguous evidence of its conclusion by directing that retroactive effect be given, then, and only then, will the presumption be overridden.
>
> 3. Consistent with these principles, normal rules of statutory construction "may apply to remove ... the possibility of retroactivity." Nothing short of an unambiguous directive, however, will justify giving a statute a retroactive effect. Thus, when normal rules of statutory construction indicate that a statute is intended to be applied in a manner involving no retroactive effect, a Court need inquire no further. On the other hand, if such construction suggests that a retroactive effect may have been intended, the traditional presumption nevertheless bars retroactive application unless an unambiguous congressional directive is found.

*U.S. v. Roberson*, 194 F.3d 408, 411-12 (3d Cir. 1999) (citation omitted).

13

enactment (May 20, 2009)," the Congressional record states that "courts should rely on these amendments to clarify the existing scope of False Claims Act liability, [even if the alleged violations occurred before the enactment of these amendments."] 155 Cong. Rec. E1295-03, at E1300.

Going to the second step of the analysis, retrospective application of the amendments would cause retroactive effects. If, in fact, plaintiff were not required to prove actual payment or approval under the 2009 amendments to the FCA, application of the FCA amendments would cause retroactive effects because it would increase defendant's liability for past conduct. See Landgraf, 511 U.S. at 280. Although the Congressional record implies retrospective application, it directed against applying the amendments in a way that would cause retroactive effects. See 155 Cong. Rec. E1295-03, at E1300 (Congress intended to avoid "extensive litigation over whether the amendments apply retroactively, as occurred following the 1986 False Claims Act amendments."). Congress has not provided the requisite instruction necessary for the amendments to be used to cause retroactive effects.

For the aforementioned reasons, the 2009 FCA is not retrospective and the claims under 31 U.S.C. § 3729(a)(2) must be dismissed because plaintiff has not alleged that defendant's purportedly false claims were actually paid or approved.

## V. CONCLUSION

For the reasons stated above, the court denies defendant's motion to dismiss with respect to § 3729(a)(1), and grants the motion with respect to § 3729(a)(2).

An appropriate order will issue.